```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                  SOUTH BEND DIVISION
```

ANDREW U.D. STRAW,            )
                              )
          Plaintiff,          )
     v.                       )      NO. 3:16-CV-276
                              )
THOMAS M. DIXON, BRENDA       )
SCONIERS, AND BRENDA F.       )
RODEHEFFER,                   )
                              )
          Defendants.         )

## OPINION AND ORDER

This matter is before the Court on the First Amended Complaint and Petition to Proceed without Pre-Payment of Fees and Costs, filed by Plaintiff, Andrew U.D. Straw, on May 28, 2016, and May 9, 2016, respectively.  (DE #2 & DE #6.)  For the reasons set forth below, the Court:

(1) **DISMISSES** the amended complaint (DE #6);

(2) **DENIES** Plaintiff's request to proceed *in forma pauperis* (DE #2);

(3) **GRANTS** Plaintiff until August 29, 2016, to submit a second amended complaint <u>along with payment of the filing fee</u>; and

(4) **CAUTIONS** Plaintiff that if he does not do so by that deadline, this case will be dismissed without further notice.

Plaintiff filed a complaint and a motion to proceed *in forma pauperis* ("IFP") on May 9, 2016.  (DE #1 & DE #2.)  He filed an amended complaint on May 28, 2016.  (DE #6.)  The IFP statute, 28 U.S.C. section 1915, allows an indigent plaintiff to commence a

civil action without prepaying the administrative costs (e.g. filing fee) of the action. See 28 U.S.C. section 1915(a)(1); see also *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). When presented with an IFP application, the district court must make two determinations: (1) whether the suit has sufficient merit; and (2) whether the plaintiff's poverty level justifies IFP status. See 28 U.S.C. section 1915(e)(2); *Denton*, 504 U.S. at 27; *Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 757 (7th Cir. 1988). If a court finds that the suit lacks sufficient merit or that an inadequate showing of poverty exists, the court must deny the IFP petition. See *Smith-Bey*, 841 F.2d at 757.

A court must dismiss a case at any time, notwithstanding any filing fee that may have been paid, if it determines that the suit is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim that "no reasonable person could suppose to have any merit" is considered frivolous. *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000). To determine whether the suit states a claim under 28 U.S.C. section 1915(e)(2)(B)(ii), a court applies the same standard as it would to a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *DeWalt v. Carter*, 224 F.3d 607, 611 (7th Cir. 2000). In deciding a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded factual allegations as true

and view them in the light most favorable to the plaintiff. *Luevano v. WalMart Stores, Inc*., 722 F.3d 1014, 1027 (7th Cir. 2013). To survive dismissal, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). "This means that the complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief." *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632-33 (7th Cir. 2013) (internal quotation marks and citation omitted). However, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

In this case, as to the financial prong of the analysis, Plaintiff indicates that he is unemployed but has received a total of $25,944 from various "self-employment" sources[1] over the last twelve (12) months, including Social Security Disability Insurance in the amount of $13,344. (DE #2, p. 1.) He indicates that he has

---

[1] He lists "Disability Human Rights Violators (no tax) 2x in December 2015" in the amount of $10,000, an "NZ Forgery Verification Project in May of 2016" in the amount of $100, and "Ukrainian Asylum Seekers, Immigration Case October 2015" in the amount of $2,500. (DE #2. p. 1.)

3

$579.76 in a checking account, and that he is not supporting any dependants. (*Id*. at 2.)

The federal poverty guideline for a household of one living in Indiana is $11,880. ANNUAL UPDATE OF THE HHS POVERTY GUIDELINES, 81 Fed. Reg. 4036 (Jan. 25, 2016). The annualized value of Plaintiff's social security disability benefit income alone is above the federal poverty guideline. Thus, the Court finds that Plaintiff is not financially eligible to proceed IFP in this case, and the motion must be **DENIED** on that basis.

Furthermore, as to the sufficiency prong of the analysis, in his amended complaint, Plaintiff has sued three parties, Thomas M. Dixon ("Dixon"), Brenda Sconiers ("Sconiers"), and Brenda F. Rodeheffer ("Rodeheffer") (collectively, "Defendants"). Although the complaint is thirty-three pages long with an additional three hundred and thirty-nine pages attached as exhibits, much of the factual detail does not apply to Defendants in the context of Plaintiff's current alleged cause of action, which he describes as a "diversity suit that the defendants violated [his] right to be free from embarrassment, annoyance, ridicule, and costs in the form of Abuse of Process under the tort law of the State of Indiana" and "violations of my disability civil rights by the ADA Coordinator of the Indiana Supreme Court." (DE #6, p. 1.) In the jurisdiction and venue section of the amended complaint, Plaintiff reiterates that this is a "diversity action with an amount over $75,000 at

issue," and he describes Defendants as all being "Indiana residents" and himself as an "Illinois resident." (*Id*. at 32.) Amidst a plethora of irrelevant autobiographical and other background information, it appears that Plaintiff's amended complaint takes issue with the actions performed by Defendants surrounding a malpractice lawsuit that Dixon filed on behalf of Sconiers against Plaintiff in October of 2013. Judge Jon E. DeGuilio succinctly described the history of that malpractice case in a previous lawsuit Plaintiff filed against these same Defendants as follows:

> [T]he legal malpractice action was filed by Sconiers, with the assistance of her attorney Thomas Dixon, after Sconiers missed the filing deadline for suing the St. Joseph County Public Library for alleged sexual harassment. This malpractice action was filed against Straw premised on his alleged failure to timely file Sconiers' complaint against the Library; however, Straw asserts that the action is frivolous because although he represented Sconiers in pre-suit settlement discussions with the Library, Straw did not agree to represent Sconiers beyond the attempted settlement. According to Straw, he did not agree to file a lawsuit against the Library on Sconiers' behalf because he does not engage in trial work-the means by which Straw accommodates his disability.

*Straw v. Sconiers*, No. 3:14-CV-1772-JD, 2014 WL 7404065, at *2 (N.D. Ind. Dec. 30, 2014).[2] While the malpractice action was

---

[2] Judge DeGuilio described Plaintiff's claims, which he originally brought under Title II and IV of the Americans with Disabilities Act, as "utterly frivolous" and dismissed the complaint for a lack of subject matter jurisdiction or, in the alternative, for failing to state a claim. *Id*. at *1. Plaintiff later sought to amend his complaint to allege claims of intentional infliction of emotional distress and constitutional torts pursuant to 42

5

pending in St. Joseph Superior Court, Case No. 71D07-1310-CT-000265, Plaintiff filed a "Petition for Redress of Grievances" with the Clerk of the Indiana Supreme Court on August 15, 2014, declaring that the Indiana Supreme Court had discriminated against him during his tenure as a State Court Administration employee in 2000-2002, during the bar application process in 2002, and for several years afterwards. (DE #6, pp. 15-16; DE #6-4.) On September 3, 2014, Rodeheffer, whom Plaintiff describes as the "ADA Coordinator of the Indiana Judicial Branch," filed a request for an investigation into Plaintiff's conduct with the Indiana Supreme Court Disciplinary Commission. (DE #6, p. 16; DE #6-5.) In it, Rodeheffer states that Plaintiff's "mental health problems have become sufficiently severe that I believe he is not competent to practice law." (DE #6-5.) She describes numerous lawsuits that Plaintiff has filed as "nonsensical," and she references the Sconiers malpractice action. (*Id.*)[3] That same day, Rodeheffer

---

U.S.C. section 1983 based on the same general conduct, but Judge DeGuilio agreed with the magistrate judge who denied the motion to amend because the proposed amended complaint "simply repackage[d] the same conclusory, frivolous claims previously rejected by this Court." *Straw v. Sconiers*, No. 3:14-CV-1772-JD, 2015 WL 7738042, at *2 (N.D. Ind. Dec. 1, 2015). The action before Judge DeGuilio was subsequently voluntarily dismissed by Plaintiff because he indicated that he preferred to litigate the claims in a separate case that he had filed in the Southern District of Indiana. See *Straw v. Sconiers*, No. 3:14-CV-1772-JD at docket entry numbers 56, 58, and 59. The Southern Indiana case was ultimately terminated after that court granted motions to dismiss filed by the various defendants. *Straw v. Ind. Supreme Ct.*, No. 1:15-CV-01015-RLY-DKL, 2016 WL 344720, at *1 (S.D. Ind. Jan. 28, 2016).

[3] The disciplinary complaint against Plaintiff, number 98S00-1601-DI-12, is still pending. See Indiana Roll of Attorneys, https://publicaccess.courts.in.gov/docket/Search/Detail?casenumber=98S001601DI00012 (last accessed July 26, 2016).

sent Dixon an email stating, "[a]s a courtesy, I just wanted to let you know that I filed a disciplinary charge against Mr. Straw today and included pleadings from the federal case he filed against you and your client." (DE #6, p. 17; DE #6-6.) Plaintiff alleges that Dixon entered the disciplinary complaint into the malpractice action even though it was "irrelevant to the contractual question and the tort question surrounding Sconiers' case" and that it was only done so to "'showcase' [his] mental disability in such a manner that was meant to 'embarrass, annoy, or ridicule' [him]." (DE #6, pp. 17-18.) According to Plaintiff, after the disciplinary action was placed into the malpractice case, his insurance company "wanted to settle the case rather than fight it." (DE #6, p. 18.) He indicates that the "case was settled and stipulation to that effect was entered and the ORDER of dismissal entered with prejudice on July 15, 2015." (*Id*. at 22.)

Plaintiff describes his claim against Dixon in Count I as "abuse of process" based on the fact that Dixon "put[] Rodeheffer's Indiana Supreme Court disciplinary complaint into the malpractice suit" in order to "'embarrass, annoy, and ridicule' [Plaintiff] and make it look to [Plaintiff's] insurance company that the appellate courts in Indiana are biased against [Plaintiff]." (*Id*. at 23-24.) The claim against Sconiers in Count II is also described as one for abuse of process in that, according to Plaintiff, she is "responsible for her lawyer, who is her personal agent" who "used

7

inappropriate, biased material and violated [Plaintiff's] civil rights in order to get money from [Plaintiff's] insurance company that she did not deserve." (*Id*. at 27.) Finally, the claim against Rodeheffer in Count III states that Rodeheffer discriminated against Plaintiff in "several different forms and helping Dixon to achieve abuse of process was one. Rodeheffer is responsible for suborning the abuse of process that Dixon did." (*Id*. at 28.) Plaintiff also alleges that Rodeheffer is "personally responsible for violating my rights under the ADA, Title II, the ADA's retaliation provisions, and the Rehabilitation Act of 1973, Section 504." (*Id*.)

Plaintiff, a currently licensed attorney, has stated specifically in his amended complaint that his lawsuit is based on state law tort claims and that this Court's jurisdiction is premised upon diversity. However, he has not adequately alleged diversity of citizenship between the parties to ensure that this Court has jurisdiction over such an action. Under 28 U.S.C. § 1332(a)(1), a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between *citizens* of different States." (emphasis added). When a district court's jurisdiction is based on 28 U.S.C. § 1332, there must be complete diversity of citizenship between the opposing parties. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752,

758 (7th Cir. 2009). In other words, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Here, Plaintiff simply alleges that Defendants are residents of Indiana and that he is a resident of Illinois. This is not sufficient. See 28 U.S.C. § 1332; *Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905); *Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002); *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). Plaintiff has not established that diversity jurisdiction exists, and therefore his amended complaint must be **DISMISSED** for lack of subject matter jurisdiction.

Even if Plaintiff had properly alleged that diversity jurisdiction exists, he has failed to state a claim for abuse of process. In Indiana,

> [a]n action for abuse of process requires a finding of misuse or misapplication of process for an end other than that which it was designed to accomplish. An action for abuse of process has two elements: (1) ulterior purpose or motives, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. However, if a party's acts are procedurally and substantively proper under the circumstances, then that party's intent is irrelevant. A party may not be held liable for abuse of process if the legal process has been used to accomplish an outcome which the process was designed to accomplish.

*E. Point Bus. Park, LLC v. Priv. Real Est. Holdings, LLC*, 49 N.E.3d 589, 604-05 (Ind. Ct. App. 2015) (internal citations omitted).

Here, as to Sconiers and Dixon, Plaintiff alleges that they committed an abuse of process when Dixon inserted the disciplinary complaint filed by Rodeheffer into the malpractice action that was then pending against Plaintiff. However, it is both a regular and legitimate use of process to enter relevant materials into a court record in order to facilitate a favorable decision in ones own case. While Plaintiff alleges that the disciplinary complaint was "absolute[ly] irrelevan[t]" to the malpractice action, an attorney's history of professional conduct, or possible lack thereof, is certainly relevant to a malpractice action, especially one premised upon an attorney's alleged failure to act accordingly on his client's behalf with regard to a statute of limitations. Nothing in the amended complaint suggests that the legal process used by Sconiers and Dixon was procedurally or substantively improper. See *Cent. Nat'l Bank of Greencastle v. Shoup*, 501 N.E.2d 1090, 1095 (Ind. Ct. App. 1986) ("[a] regular and legitimate use of process, though with an ulterior motive or bad intention is not a malicious abuse of process"); see also *Crenshaw v. Antokol*, No. 3:04-CV-182-PS, 2005 WL 6088857, at *8 (N.D. Ind. Mar. 29, 2005) (dismissing the plaintiff's abuse of process claims because she had "at most, alleged only an ulterior purpose" and had not properly alleged that the defendants "used legal process in a way that was not proper in the normal prosecution of the case"). As to Rodeheffer, while Plaintiff alleges that she "help[ed] Dixon to

10

achieve abuse of process" by providing him with a copy of the disciplinary complaint, such a deed is not the type of "process" contemplated by case law in abuse of process suits. As noted by the Indiana Court of Appeals, process has been defined as the "use of the judicial machinery" which "includes actions undertaken by a litigant in pursuing a legal claim." *Reichhart v. City of New Haven*, 674 N.E.2d 27, 32 (Ind. Ct. App. 1996) (citation and internal quotation marks omitted). Rodeheffer's email to Dixon was neither sent in the context of pursuing a legal claim nor did it utilize judicial machinery, so it did not constitute a "judicial process" that would form the basis of a valid claim. Thus, Plaintiff has failed to state a claim for abuse of process against any of the Defendants.

Furthermore, in the event that, despite his averments of jurisdiction based on diversity, Plaintiff is attempting to bring federal claims against Dixon and Sconiers pursuant to the Americans With Disabilities Act ("ADA"), he has already been informed by Judge DeGuilio in his previous lawsuit why those claims are frivolous.

> The ADA currently addresses employment in Title I, public entities and services in Title II, providers of public accommodations and services in Title III, telecommunications in Title IV, and contains other miscellaneous provisions, including an anti-retaliation and coercion provision, in Title V. . . . Even assuming that Straw is disabled within the meaning of the ADA, he has not alleged, nor even suggested that Sconiers or Dixon are

11

> covered employers or similar agencies under 42
> U.S.C. § 12111, are considered public entities
> or places of public accommodation, or that
> they provide public services, programs or
> activities, such that either one of them would
> be subject to the requirements of the ADA. . .
> . Simply put, Straw's claim that Sconiers and
> Dixon are subject to the ADA and have violated
> the ADA by bringing a legal malpractice
> lawsuit against him which thereby causes Straw
> to violate his own self-imposed accommodation
> against litigation, is utterly frivolous and
> fails to allege even a colorable claim arising
> under the Constitution or laws of the United
> States.

*Straw v. Sconiers*, No. 3:14-CV-1772-JD, 2014 WL 7404065, at *3-4 (N.D. Ind. Dec. 30, 2014) (internal citations omitted). The same sound reasoning applies to Plaintiff's current allegations that Sconiers and Dixon somehow violated the ADA when Dixon entered Rodeheffer's disciplinary complaint into the record of the malpractice action. Any such claims are frivolous.

Similarly, as to possible allegations that Rodeheffer personally[4] violated Plaintiff's rights under the "ADA, Title II, the ADA's retaliation provisions, and the Rehabilitation Act of 1973, Section 504" based on the conduct described in the amended complaint, Plaintiff has been advised that "no claim can be brought under either of those titles of the ADA or under the Rehabilitation Act against a defendant in his or her individual capacity." *Straw v. Ind. Supreme Ct.*, No. 1:15-CV-1015-RLY-DKL, 2015 WL 9455588, at

---

[4] In his amended complaint, Plaintiff specifically states that Rodeheffer is "personally responsible," so the Court will only address the alleged claims against her in her individual capacity. (See DE #6, p. 28.)

12

\*6 (S.D. Ind. Dec. 23, 2015) (citations omitted). See also *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court was also correct to dismiss [the defendants] in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and the ADA."); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (the ADA "addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations"), *abrogated on other grounds by Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001); *Silk v. City of Chicago*, 194 F.3d 788, 797 n. 5, 798 n. 7 (7th Cir. 1999) (noting that the ADA and the Rehabilitation Act are "nearly identical" and must be analyzed under the same standard). Again, if Plaintiff is attempting to assert claims against Rodeheffer pursuant to the ADA or Rehabilitation Act in her individual capacity, such potential claims are without merit.[5]

However, because it is routine practice in this circuit, Plaintiff will be given an opportunity to amend his complaint. Should Plaintiff choose to pay the filing fee and amend his complaint, he must adequately allege diversity of citizenship between the parties if he intends to solely bring state law claims.

---

[5] Indeed, ADA claims against both Rodeheffer and the Indiana Supreme Court based on the same substantive conduct as that described in Plaintiff's current amended complaint were previously dismissed by Chief Judge Richard L. Young of the Southern District of Indiana in January of this year. *Straw v. Ind. Supreme Ct.*, 115-CV-01015-RLY-DKL, 2016 WL 344720, at \*4-7 (S.D. Ind. Jan. 28, 2016).

On the other hand, if Plaintiff attempts to bring both state and federal claims (or just federal claims), he should clarify his intention in the jurisdiction and venue section of his amended complaint. Additionally, any claims alleged must have both a sufficient factual and legal basis as described more fully above.

CONCLUSION

For the aforementioned reasons, the Court:

(1) **DISMISSES** the amended complaint (DE #6);

(2) **DENIES** Plaintiff's request to proceed *in forma pauperis* (DE #2);

(3) **GRANTS** Plaintiff until August 29, 2016, to submit a second amended complaint <u>along with payment of the filing fee</u>; and

(4) **CAUTIONS** Plaintiff that if he does not do so by that deadline, this case will be dismissed without further notice.

DATED: July 27, 2016 /s/RUDY LOZANO, Judge
**United States District Court**